MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
ALISON L. GREGOIRE
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO: 4:15CR06003-SMJ-1 |
| Plaintiff, | |
| vs. | PLAINTIFF'S SENTENCING MEMORANDUM |
| JOSEPH DANIEL MILLER, | |
| Defendant. | |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and ALISON L. GREGOIRE, Assistant United States Attorney, submits the following sentencing memorandum:

Government's Sentencing Memorandum          1

I.

STATEMENT OF FACTS

All facts are taken from the plea agreement unless otherwise stated:

On October 31, 2014, Homeland Security Investigations (HSI) Task Force Officer (TFO) Jeffrey Bickford posted a Craigslist Ad with a title of: "Crazy and very young. Looking to explore myself –w4m (Richland)." The ad stated: "I'm a bit young and want to learn some new things. I have never experienced the things I want to. I am real and live in Richland. My big brother is a Richland Bomber."

On October 31, 2014, TFO Bickford received an email through Craigslist that was from "Joe." The email stated "I would like to help you out and let you explore things with me. I'm laid back, athletic, clean and I can host. Text me if you are interested. 509 420-3181." The email contained two photos. One of the photos showed Defendant taking a self-portrait in the mirror with no shirt on. The second photo was of Defendant wearing a black hat with the letter "P" on it.

TFO Bickford responded via Google Voice, text on November 4, 2014. During the dialogue, Defendant identified himself as "Joe." TFO Bickford identified his fictitious persona as being named "Kaylee" and when "Joe" asked how old Kaylee was TFO Bickford responded by saying, "I'm almost 15 buy act WAY older!" Defendant identified himself as being 31 years old. During the dialogue the Defendant identified his email address as brvs95@live.com. He also

Government's Sentencing Memorandum                2

inquired about what school "Kaylee" goes to. TFO Bickford stated "I used to go to Carmichael. I am home schooled now. Got kicked out."

As the dialogue progressed, Defendant asked, "What do you want to do with me." TFO Bickford responded by saying, "I don't really know. im open for everything. I want somebody to make me feel good." Defendant stated, "with you not being even 15 yet, how do I know I'm not getting set up." TFO Bickford stated, "what do I mean set up? I don't know what u r asking?" Defendant responded by saying, "How do I know I'm not being set up by a cop for possibly talking to a minor about having sex with them." He also stated, "And I don't want to go to jail."

As the dialogue carried on, Defendant explained how he could please Kaylee indicating, "In good with my tongue" and then, "Have you had someone use their tongue on you before?" TFO Bickford replied stating, "Of course I've kissed with my tounge b4…u silly boy!" Defendant stated, "Lol, wasn't talking about kissing" followed by, "Have you had someone pleasure you with there tongue" and then "Oral." TFO Bickford stated, "no, but I wuld totally like to try that. Maybe after that it wont hurt so bad." The next text message from suspect states, "Can you get away right now?"

On November 4, 2014, TFO Bickford's persona arranged to meet Defendant near Carmichael middle school in a gravel parking lot. Defendant stated, "I'm in a

red car." TFO Bickford and Officer Flohr responded to the parking lot where they observed a red car with Defendant as its only occupant. TFO Bickford then sent Defendant a message indicating Kaylee was unable to meet.

Defendant continued to text Kaylee into the night. During the messages Joe said, "I wouldn't want you to get pregnant" "Or get a disease" "I'm clean." He also said, "I can use protection." As the texts went on, Defendant made several references about being excited to meet "Kaylee" and asked if she could "Sneak out the window when she [Kaylee's mother] does go to bed."

During the dialogue TFO Bickford's persona expressed concern about getting pregnant. Defendant tried to calm her fears by stating "I don't have to finish." When asked for clarification about what Defendant meant by the term "finish," Defendant said, "When I guy shoots his load." He a few texts later Defendant said he was clean and that "I can use protection." Defendant then spoke about meeting "Kaylee" in the dugout. He was referring to the dugout at Carmichael middle school referenced in earlier conversation.

On November 5, 2014, Defendant began the dialogue. Defendant asked if he could meet with Kaylee before she left for her father's. Defendant asked if she could meet before he went to work at 1500 hours. In later conversation he states, "If anyone finds out about this I could go to jail and finding a job would almost be impossible after." Defendant notes he could go "to jail for sexting a minor." He

Government's Sentencing Memorandum    4

also said, "Even just texting you certain things is still illegal for me to do since your under age. I can't take the risk of anyone seeing the texts." Defendant then said, "I've been really excited to meet you, I guess I'm going to have to pleasure myself before I go to work." A few texts later he states, "I'll use my tongue to start things and I'll be gentle the whole time and just focus on you."

On November 6, 2014, Defendant said, "I bet you want to feel my body with your hands?" He then inquired about how many times "Kaylee" had sex.

On November 21, 2014, at about 2218 hours TFO Bickford received several messages from Defendant who said that he got a new phone and that he had lost all of his contacts. He then asked if "Kaylee" was back in Richland.

On November 22, 2014, Defendant asked "what are you doing today" followed by "Can you get away and meet me?"

On November 23, 2014, Defendant asked "let me know if you can sneak away tonight."

On November 25, 2014, Defendant asked "Kaylee" to tell him how crazy she could be. Defendant asked, "Have you gone down on a guy?!" and then said he liked to change positions and asked, "Do you want to try being on top?" "Kaylee" responded stating she did. Defendant then referenced his "man part" is large.

On December 3, 2014, Defendant asked, "When can you get away and see me?" In a follow-up text, Defendant states, "Can you sneak out after she [Kaylee's mother] falls asleep at night?"

TFO Bickford made arrangements for "Kaylee" to meet Defendant at the 7-11 located at 415 Wright Avenue in the City of Richland, WA. From there, "Kaylee" said she would was going to take him to her house. Defendant stated had "protection" with him. He clarified that he meant "condoms" when he spoke about "protection." Defendant also said, "And I'll take it nice and slow so it doesn't hurt."

At about 1750 hrs, TFO Bickford, SA Zorn and SA Pitt were in the area of 7-11 when Defendant arrived and "Kaylee" stood him up again.

## II.

## SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's total offense level is 16, criminal history category is I, and guideline range is 21-27 months.

## III.

## GOVERNMENT'S OBJECTION TO PSIR

The government has no objections to the PSIR.

IV.

RESPONSE TO DEFENDANT'S OBJECTIONS TO PSIR

Defendant has filed no objections to the PSIR as of the date of this memorandum.

V.

SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's attempting to entice a minor and meet with her for sex. In order to entice the minor, Defendant sent her obscene messages.

At the time of his arrest, Defendant stated he was just talking, with no intent to follow through. ECF No. 38 at ¶ 17. In fact, Defendant was fully aware what he was doing was illegal and asked, "How do I know I'm not being set up by a cop for possibly talking to a minor about having sex with them." ECF No. 38 at ¶ 13. He then said, "You do know it's illegal to have sex with a minor." ECF No. 38 at ¶ 13. Defendant also made very pragmatic statements about the sex he would have with this child, which are indicative of an intent to follow through, indicating he

would wear protection so she would not get a disease or get pregnant. ECF No. 38 at ¶ 15.

This is not a case of just talk. Defendant demonstrated his full intent, to engage in sex with a fourteen year old minor, through several actions that went well beyond conversation. Defendant traveled to meet the minor twice, the second time he did so explicitly for sex. ECF No. 38 at ¶ 17; ECF 32 (second meeting at a 7-11 was prefaced with specific arrangements that the two would go to Kaylee's house and Defendant would bring a condom).

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks that the Court sentence Defendant to 48 months, which is a 21 month variance up from the top of the guideline. The government asks that the court also order a ten (10) year term of supervised release. Such a sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

The government realizes its requested sentence is substantially above the guideline range for the offense Defendant pled guilty to, pursuant to his plea agreement with the government. As the Court is well aware, Defendant was originally charged with Attempted Enticement of a Minor, which carried a 120 month mandatory minimum. 18 U.S.C. § 2422(b). A sentence to 120 months have

been an above guideline sentence for Defendant, who has no criminal history whatsoever and accepted responsibility.

While the government believes 120 months would be too much for this individual given his lack of criminal history and his willingness to accept responsibility, 48 months is appropriate. Defendant was arranging to meet a minor to engage in sexual acts. Defendant had several very sexually explicit conversations with the minor prior to traveling to meet her. Suffice to say, the misconduct is very serious.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

The government asserts imprisonment for 48 months is sufficient to deter criminal misconduct. The government, however, also recommends a ten year term of supervised release. The government notes U.S.S.G. § 5D1.2(b) provides, "[i]f the instant offense of conviction is a sex offense, ... the statutory maximum term of supervised release is recommended." The instant conviction is a sex offense. U.S.S.G. § 5D1.2, application n. 1 (defining "sex offense" as "an offense, perpetrated against a minor, under chapter 109A of title 18, United States Code."). *See also* ECF No. 71 at ¶ 90. The statutory maximum term of supervised release is life. ECF No. 71. However, the government is confident the recommended 48 months imprisonment followed by supervised release for ten years will accomplish adequate deterrence.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The government believes it is important for the Court to consider that Defendant thought he was speaking to a real child in this case. The government agrees with United States Probation that "there is no identifiable victim" (ECF No. 38 at ¶ 19) in this case, because Defendant happened to be speaking to a law enforcement officer. That does not mean Defendant does not pose a real danger to children, given his misconduct in this case. Defendant communicated indecently to a minor, acknowledged to the minor that he was aware what he was doing was illegal, provided suggestions as to how the minor could avoid detection by her mother, and made a plan to have sex with the fourteen year old. While, thankfully, there was no minor involved, there very well could have been, and had things been as Defendant believed, there would have been.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training.

6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment.

7. <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplates a term of imprisonment.

Government's Sentencing Memorandum          10

8. <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

The government has detailed the reasons for its proposed variance from the guideline range above.

## VIII.

## GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the court impose a sentence to 48 months imprisonment as well as a ten year term of supervised release.

Respectfully submitted this 9th day of September 2015.

        MICHAEL C. ORMSBY
        United States Attorney

        s\ Alison L. Gregoire
        ALISON L. GREGOIRE
        Assistant United States Attorney

I hereby certify that on September 9, 2015 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:   Rick Hoffman.

> s/Alison l. Gregoire
> ALISON L. GREGOIRE
> Assistant United States Attorney
> United States Attorney's Office
> 402 E. Yakima Avenue, Suite 210
> Yakima, WA 98901
> Phone: (509) 454-4425